[No. 19896.  Department One.  September 27, 1926.]

Guy C. Tedford *et al., Appellants,* v. Wenatchee
Reclamation District, *Respondent.*[1]

[1] Appeal (473)—Review—Former Decision as Law of Case.  A decision of the supreme court to the effect that a water user was not guilty of laches in not applying for additional water to which he was entitled under a contract, becomes the law of the case and conclusive on a second appeal, although the first decision was upon a demurrer to the complaint and the second appeal was taken upon the evidence, where the proof was to the same effect as the complaint.

[2] Corporations (158, 165)—Officers and Agents—Representation —Contracts—Ratification.  An agent of a corporation, in general charge of its affairs and authorized to close up water contracts and deliver a deed for ten inches of water, had authority to give a deed for seven inches, with a "rider" for three more, if required, where the grantee paid the consideration for ten inches; and the company having acquiesced therein for several years, is not in a position to question the agent's authority.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered January 3, 1925, dismissing an action for specific performance, after a trial to the court on the merits.  Reversed.

*Sumner & Lebeck,* for appellants.
*Crollard & Steiner,* for respondent.

Askren, J.—This is an action for specific performance of a contract for three inches of water.  From a judgment of dismissal, plaintiffs have appealed.

The evidence establishes the following:

Prior to 1902, one J. W. Bosworth, appellants' predecessor in interest, was the owner of stock in the Settlers' Ditch Company, an irrigation company, entitling him to ten inches of water.  In that year, arrangements were made whereby all those holding stock in that com-

[1] Reported in 249 Pac. 490.

pany were to deliver their stock to the Wenatchee Canal Company and receive therefor a like number of inches of water from the Wenatchee Canal Company. In 1903, the conveyance was made. At that time, two of the officers of the Wenatchee Canal Company were absent from the state, and one Gellatly was employed to take charge of the concern during their absence. Printed forms were left with him and he was authorized to make the exchange with those who were to turn in stock of the Settlers' Ditch Companay for Wenatchee Canal Company stock, and execute conveyances therefor. When Bosworth turned in his stock he was entitled to ten inches of water, but being uncertain as to the necessity for that amount and not being desirous of being burdened with the maintenance charges for all of it, if any portion was unused, he took conveyance of seven inches of water and received from Gellatly a rider attached to the conveyance that provided:

"Wenatchee, Washington, Oct. 21, 1903.

"This is to certify that in the settlement of the water agreement between J. W. Bosworth and the Wenatchee Canal Company, which is dated March 7th, 1902, said Bosworth held sufficient stock in the Settlers Ditch Company to entitle him to ten inches of water from the Wenatchee Canal Company, under the terms of said agreement. On this day the Wenatchee Canal Company issued to said Bosworth a water right which calls for fourteen one-hundredths of one second foot of water per second of time, for seven inches. Said Bosworth accepted said water right with the understanding that, should said seven inches above mentioned prove to be insufficient, he should have the right to get three inches more, by paying a pro rata maintenance fee therefor.      Wenatchee Canal Company

"By J. A. Gellatly."

In 1907, Bosworths sold the land to appellants, and delivered the water right contract from the canal com-

pany.  The land has been continuously irrigated since that time.

In 1915, the respondent took over the entire property of the canal company, the conveyance being made subject to existing rights of water users and water deed holders.  The property of the canal company at that time was in bad condition, and large sums of money were expended in improving the plant and service.

In 1921, appellants, concluding that seven inches of water was insufficient, made application for three inches more in conformity with the contract and rider which we have set out, and offered to pay the maintenance charges therefor.  This was refused, and the present action instituted.

When the complaint was filed, a demurrer was interposed and sustained by the trial court upon two grounds, one of which was laches in applying for the extra three inches of water.  Upon appeal, the demurrer was ordered overruled and we held that the doctrine of laches was not applicable under the allegations of the complaint.  *Tedford v. Wenatchee Reclamation District,* 127 Wash. 495, 221 Pac. 328.

After trial, the court dismissed the action upon two grounds; first, that Gellatly was not authorized to sign the rider on behalf of the corporation, Wenatchee Canal Company, and secondly, that the appellants were guilty of laches.

[1]  Taking up the grounds of the court's dismissal in inverse order, appellants insist that the question of laches was decided upon the former appeal.  We think this contention must be upheld.  While it is true that the decision in the former appeal was based upon the allegations of the complaint, yet the proof here was in conformity thereto, with the exception of the reserved

question of whether Gellatly's agency authorized him to execute the rider. The former opinion expressly held that, under the terms of the rider,—assuming, of course, its due authorization,—appellants were at liberty to demand the extra three inches of water whenever the seven inches proved insufficient, whether that time was "in one year or in forty years." The decision, therefore, stated the law of the case as applied to the rider and the allegations of the complaint, and, while the argument made upon this point raises a very interesting question, we do not feel at liberty, under our decisions, to re-examine a question foreclosed by a former appeal.

[2] The other point in controversy arises upon the question of whether Gellatly's authority was sufficient to authorize the execution of the rider attached to the water deed. It will be noticed that it is signed "Wenatchee Canal Company, by J. A. Gellatly," and is not acknowledged. Respondent claims that it is a new and different contract between the canal company and Bosworth, and distinct from the original dealing between them. But it will be remembered that the canal company chose Gellatly to close up these contracts in the absence of its officers; that Bosworth was entitled to a deed for ten inches of water; that he delivered the consideration for ten inches of water, and it was retained by the canal company. Now it seems paradoxical to argue that, where one is put in sole charge of the closing of the contracts and is authorized and empowered to deliver a deed for ten inches of water upon the payment of 'a certain consideration, upon the payment therefor he is not empowered to deliver a deed for seven inches with a provision for three more. This can hardly be said to be in excess of his powers, but rather is it an instance of failing to use the full

powers of agency granted. The evidence showed that the rider was executed in duplicate, and no complaint appears to have been made by the canal company because of the execution of the rider, and, as we have seen, the canal company kept the consideration for the full ten inches of water. When testifying upon the question of his authority, the witness Gellatly, after testifying that he was manager for the canal company, said:

"Q. How long were you employed by the company? A. About a year and a half or two years. I don't remember the exact time. Q. Were the officers situated here during that time? A. They were absent most of the time. Q. Who had charge of the company affairs during that time? A. I did. Q. That was during the period of time that the original contracts for water rights were being closed with the contract holders? A. Yes. Q. In other words, it was your duty to collect the money and deliver the conveyances for the water? A. Yes, sir. Q. Where were Mr. Clark and Mr. Chase during that time? A. In Montana most of the time, digging another ditch—putting in another ditch. . . . Q. What authority did you have from the officers with reference to closing them? A. I was put in charge of the entire business. Everything was turned over to me that they had, all the records and files and everything they possessed. Q. Were they advised of the manner in which you had closed them, from time to time? A. Yes. Q. Did they ever make any objections to the manner in which they were closed? A. The only objection they made, after I was through they criticized me for charging additional maintenance where they had extra water. Q. That you should not charge extra where they had additional water? A. Yes, that I should charge them extra for it."

There is no dispute as to the facts regarding the exchange, nor the execution or purpose of the rider, and only the authority to execute it is challenged.

The question of agency depends to a marked degree upon the facts in a given case. Those detailed here are ample to sustain the validity of the rider, whether viewed from the standpoint of agency or of ratification.

We think, under the authority shown and the acquiescence of the canal company, that the rider must be held to be valid and binding.

The judgment is reversed, with instructions to enforce the provisions of the rider attached to the contract.

TOLMAN, C. J., HOLCOMB, FULLERTON, and BRIDGES, JJ., concur.